UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
FRANCISCO J. VAZQUEZ,          )
                               )
            Petitioner         )
        v.                     )      Civil No. 05-40060-NMG
                               )
                               )
UNITED STATES OF AMERICA,      )
                               )
            Respondent.        )
```

**GOVERNMENT'S RESPONSE TO FRANCISCO J. VAZQUEZ' MOTION
TO VACATE, SET ASIDE OR CORRECT SENTENCE**

The government hereby opposes the motion of the petitioner, Francisco J. Vazquez, filed pursuant to 28 U.S.C. §2255, to vacate, set aside or correct sentence.  As set forth below, this Court should summarily deny that motion.

**The Criminal Case**

1.   *Procedural History*.  On April 25, 2003, Defendant-Petitioner Francisco J. Vazquez, along with Co-defendant James Corey, was charged in a four-count indictment with three counts of tampering with a witness, victim or informant, one count of conspiracy tampering with a witness, victim or informant, and aiding and abetting.  *See* Criminal No. 03-40008-NMG, Dkt. #2.

On January 8, 2004, Vazquez plead guilty to all four counts of the indictment in which he was named.  On April 1, 2004, this Court sentenced Vazquez to 151 months of imprisonment and three years of supervised release following his incarceration.  The Judgment Order issued on April 2, 2004.  Vazquez did not appeal his conviction or sentence, nor did he file a notice of appeal.

Although this post-conviction attack was docketed by the U.S. District Court on April 5, 2005, Vazquez certified in his motion that under the mail-box rule, he mailed his Motion to Vacate on March 31, 2005, which was within the one-year statute of limitations applicable to §2255 motions.

2. _Plea Colloquy_. The evidence of Vazquez' guilt was overwhelming. At the plea colloquy, the government summarized in great detail the evidence which is set out below.

Counts 1, 2 & 4 - Related to Witness Richard A. Lauricella

Sometime between August and early October of 2002, Herminio Miles Cruz ("Cruz") and four other individuals broke into a private residence in Charlton, Massachusetts, and stole approximately twelve shotguns and rifles. Three of these firearms were later sold by Cruz to Co-defendant James S. Corey ("Corey") for approximately $200. Two of these firearms, a Winchester Camouflaged Pump Action Shotgun, bearing serial number L2903667, and an AK-47 style, Norinco SKS Tactical Rifle 7.62 x 39, bearing serial number 003038, have since been recovered. The Winchester shotgun was recovered from the home of Ross H. Sullivan and Brett R. Sullivan, and the Norinco SKS Tactical Rifle was recovered by a scuba diver at the bottom of Lake Quinsigamond in Shrewsbury, MA. Corey, Ross Sullivan and Brett Sullivan were charged in a separate Indictment (Crim. No. 03-40002-NMG) with conspiracy and possession of stolen firearms.

Herminio Cruz was also charged in a separate indictment (Crim. No. 02-40033-NMG) with conspiracy, possession of stolen firearms and being a felon in possession of firearms, and had pled guilty and was sentenced.

Sometime between September, 2002 and October, 2002, Richard A. Lauricella ("Lauricella"), age 22, shared an apartment with his childhood friend, Brett Sullivan, at 1040 Main Street in Worcester. On December 4, 2002, ATF and FBI agents went to 1040 Main Street and interviewed Lauricella about the Charlton stolen firearms. During the interview, Lauricella told the agents, among other things, that he had observed Brett Sullivan in possession of several firearms, including an AK-47 style rifle and a camouflaged pump action shotgun, which Sullivan had at one time stored at the apartment. At the completion of the agents' interview, Lauricella was served with a federal grand jury subpoena to appear before the grand jury in Worcester on December 11, 2002.

On December 11, 2002, before testifying before the grand jury, Lauricella, visibly shaken and scared, recanted his earlier statement given to agents on December 4, 2002, by stating that he had never observed Brett Sullivan in possession of any firearms. As a result of his recantation, Lauricella did not testify before the grand jury on December 11. Lauricella recanted his statement because he feared for his life.

3

Specifically, after the agents left Lauricella's apartment on December 4, 2002, Lauricella contacted Brett Sullivan and told Sullivan that the agents had been at his apartment asking questions about the firearms. Lauricella also told Sullivan that he had been served with a subpoena to appear before the grand jury on December 11, 2002, and that he planned to tell the agents and the grand jury the truth. In response, Sullivan told Lauricella, "[Y]ou do what you have to do, and I'll do what I have to do. On Judgment Day you're going to hell for telling on another brother Muslim."

On Friday evening, December 13, 2002, at approximately 11:00 p.m., Lauricella was at home watching television with a friend, when they heard a knock at the door. Lauricella answered the door, and two men (one of whom wore a mask – a handkerchief – over his face, hiding his mouth and nose) forced their way into the apartment. Lauricella recognized the masked intruder by his voice and physical appearance, and identified this person as Corey, an individual he has known since they were both seven years old. Lauricella also recognized the second intruder, whom he identified as Vazquez, an individual he has known since he was twelve years old. Once in the apartment, Vazquez and Corey threw Lauricella down on the couch in the livingroom and began punching and slapping him, all the while calling him a "rat" and telling him that he was going to hell for ratting on his brothers.

4

Vazquez and Corey also demanded to know who Lauricella had talked to.  In response, Lauricella told them that he had gone down to the courthouse in Worcester, but that he didn't tell them [grand jury/agents] anything.  Vazquez told Lauricella that he didn't believe him and that they had reason to believe that he might have said something to whomever it was that he visited at the courthouse.  During the altercation, Lauricella called out to Corey by name, after which the Vazquez said, "JIM you can take the mask off, he knows it's you," or something to that effect. At one point, Vazquez took Lauricella into the kitchen pantry where Vazquez grabbed a steak knife, acted as if he was sharpening it, and then placed the knife to Lauricella's neck, and asked Lauricella if he was ready to die.  Thereafter, Vazquez then took Lauricella back into the livingroom area, and he and Corey told Lauricella that he better get a lawyer and make things right.  Before leaving the apartment Vazquez took Lauricella's and his friend's personal identification, and threatened to kill Lauricella's grandmother if he told anybody about what had happened.  Lauricella's friend attempted to intercede on Lauricella's behalf, but was told by Vazquez to mind his business, and at one point Vazquez motioned at the friend as if he had a gun.  However, no gun was observed.

> Counts 3 and 4 - Related to Witness/Informant Scott Shays

Scott Shays ("Shays") was present when Herminio Cruz sold

5

Co-defendant James Corey the Winchester Camouflaged Pump Shotgun, the AK-47 style Norinco SKS Tactical Rifle, and a Harrington and Richardson Pump Action Shotgun, for approximately $200.

During the course of the stolen firearms investigation, Shays cooperated with federal law enforcement by telling them that Cruz had given him multiple firearms to store for him, which Shays hid in his bedroom. During a voluntary search of Shays' bedroom, approximately nine of those firearms were recovered from underneath Shays' bed. Shays plead guilty to conspiracy and possession of stolen firearms and was awaiting sentencing.

On March 24, 2003, at approximately 9:15 p.m., Shays was leaving work at Rainbow Rentals, 1049 Main Street, Worcester, when he was approached in the parking lot by four individuals wearing ski masks. One of these individuals was Vazquez, whom Shays recognized by his voice and physical appearance. Vazquez grabbed Shays by his shirt, "hemmed" him up against his car, and told him that he better keep his mouth shut and to watch what he says the next time he goes to court.

Prior to Shays being threatened on March 24, 2003, Shays and Corey were both being supervised weekly by the U.S. Pretrial Services, and Corey was present when Shays told the U.S. Pretrial Services Officer that he was working at Rainbow Rentals.

3.  _Post-conviction Issue Presented by Vazquez_.  In order to bring his post-conviction challenge within the scope of §2255,

6

Vazquez phrases his issue in primarily in terms of ineffective assistance of counsel.  Vazquez maintains that "[t]he grand jury's indictment is jurisdictionally defective in that it fails to charge an offense, because it fails to charge an essential element of each of these counts."  Vazquez' Motion at p. 2. Vazquez limits his challenge to Counts 1, 2 and 4 of the indictment.  <u>Id.</u> At pp. 2-3.  Vazquez alleges that he failed to present this defect due to ineffective assistance of counsel. <u>Id.</u> At p. 3.  Vazquez does not offer any specific facts or other evidence to support his claim.  As described below, the respondent maintains that these claims are vague, baseless and frivolous, and, therefore Vazquez' petition to vacate, set aside or correct sentence should be denied.

    4.  <u>*Elements of the Underlying Charged Offenses.*</u>  The elements are as follows:

    Count 1 - 18 U.S.C. §1512(a)(2)(A) –– Tampering with a <u>Witness, Victim, or an Informant</u>

    The elements of this offense are as follows:

    <u>FIRST</u>:    That the defendant used physical force or the threat of physical force against another person; and

    <u>SECOND</u>:    That the defendant did so, with the intent to influence, delay or prevent the testimony of that person in an official proceeding.

    The term "official proceeding" encompasses both federal criminal trials and grand jury proceedings.  See <u>United States v.</u>

7

<u>Lara</u>, 181 F.2d 183, 200 (1st Cir. 1999), <u>citing</u> <u>United States v.</u>
<u>Victor</u>, 973 F.2d 975, 978 (1st Cir. 1992).

Moreover, an official proceeding need not be pending or
about to be instituted at the time of the offense.  18 U.S.
§1512(f)(1).

Count 2 - 18 U.S.C. §1512(a)(2)(C) -- Tampering with a
<u>Witness, Victim, or an Informant</u>

The elements of this offense are as follows:

<u>FIRST</u>:    That the defendant used physical force or the
           threat of physical force against another person;
           and

<u>SECOND</u>:   That the defendant did so, with the intent to
           hinder, delay or prevent that person from
           communicating to a law enforcement officer
           information related to the commission of a federal
           offense.

Count 3 - 18 U.S.C. §1512(b)(1) -- Tampering with a Witness,
<u>Victim, or an Informant</u>

The elements of this offense are as follows:

<u>FIRST</u>:    That the defendant knowingly used intimidation or
           threats ... or engaged in misleading conduct
           toward another person; and

<u>SECOND</u>:   That the defendant did so, with the intent to
           influence, delay or prevent the testimony of that
           person in an official proceeding.

Count 4 - 18 U.S.C. §371 - Conspiracy to Tampering with a
<u>Witness, Victim, or an Informant</u>

The elements of this offense are as follows:

<u>FIRST</u>:    That the defendant is accused of conspiring to
           commit a federal crime, specifically the crime of
           tampering with a witness, victim, or an informant;

<u>SECOND</u>    That the agreement specified in the indictment,

8

and not some other agreement or agreements, existed between at least two people to tamper with a witness, victim, or an informant; and

<u>THIRD</u>:     That one of the conspirators committed an overt act in an effort to further the purpose of the conspiracy.

<u>Counts 1, 2, 3 & 4 - 18 U.S.C. §2 -- Aiding and Abetting</u>

The elements of this offense are as follows:

<u>FIRST</u>:     That someone else committed the charged crime; and

<u>SECOND</u>:     That the defendant willfully associated himself in some way with the crime and willfully participated in it as he would in something he wished to bring about.  In other words, the defendant consciously shared the other person's knowledge of the underlying criminal act and intended to help him.

### General §2255 principles

Section 2255 states:

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. §2255.  In essence, §2255 provides redress for jurisdictional or harmful constitutional errors.  It only applies to such non-jurisdictional and non-constitutional errors of federal law that involve a "fundamental defect which inherently results in a complete miscarriage of justice."  <u>United States v. Addonizio</u>, 442 U.S. 178, 185 (1979).  <u>See also</u>, <u>Reed v. Farley</u>,

9

512 U.S. 339, 353-354 (1994); <u>United States v. Tamreck</u>, 441 U.S. 780, 784 (1979). Thus, "an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment." <u>Addonizio</u>, 442 U.S. at 184. <u>See</u> <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 633 (1993) (the "principle that collateral review is different from direct review resounds throughout our habeas jurisprudence"); <u>Singleton v. United States</u>, 26 F.3d 233, 236 (1st Cir. 1994)(a presumption of finality attaches to criminal convictions once all direct appeals have been exhausted; post-conviction relief on collateral review "is an extraordinary remedy, available only on a sufficient showing of fundamental unfairness").

Absent an intervening change in the governing substantive law, a defendant cannot use §2255 to relitigate claims raised and adversely decided on direct appeal. <u>See</u> <u>Argencourt v. United States</u>, 78 F.3d 14, 16 n.1 (1st Cir. 1996); <u>Singleton v. United States</u>, 26 F.3d at 240. A decision on the merits on direct appeal has a preclusive effect on collateral review under §2255. With respect to claims that were not presented on direct review, a defendant is in almost equally dire straits. In that circumstance, he is obliged to show cause why the claim was not raised earlier (both at trial and on direct appeal), as well as actual prejudice flowing from the alleged error. <u>See</u> <u>United States v. Frady</u>, 456 U.S. 152, 170 (1982). Under the cause prong

of this standard, a defendant must establish that "some objective factor external to the defense" impeded his efforts to raise the issue at an earlier juncture. <u>See</u> <u>Coleman v. Thompson</u>, 501 U.S. 22, 753 (1991). Under the prejudice prong, the defendant must demonstrate that the alleged error "worked to his **actual** and substantial disadvantage, infecting his entire trial with error." <u>Frady</u>, 456 U.S. at 170. The cause and prejudice standard is more stringent than the plain error standard that is applied on direct appeal to defaulted claims. <u>Id</u>. 164-166.

The government accepts that Vazquez' phrasing of his issue in terms of ineffective assistance of counsel effectively satisfies the "cause" prong of the <u>Frady</u> standard, permitting this Court to consider, under the general principles of habeas law discussed above, whether Vazquez has met his burden to entitle him to post-conviction relief on collateral review. <u>See</u> <u>Knight v. United States</u>, 37 F.3d 769, 774 (1st Cir. 1994)(failure to bring a claim of ineffective assistance of counsel on direct appeal is not subject to the cause and prejudice standard). Thus, this Court must consider the merits of Vazquez' ineffectiveness claim to determine whether he has met his burden under the well-established law governing such claims.

### The Governing Standard for Ineffectiveness Claims

The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel. In <u>Strickland v. Washington</u>,

466 U.S. 668, 686-87 (1984), the Supreme Court articulated a two-part test to determine whether, in a given instance, that right has been violated.  First, the performance of counsel must be shown to have been deficient.  Second, the deficient performance must be shown to have prejudiced the defense.  Strickland, 466 U.S. at 686-687.

The first part of the Strickland test deals with the measure of effective assistance:

> [A] court deciding an actual ineffective assistance claim
> must judge the reasonableness of counsel's challenged
> conduct on the facts of the particular case, viewed as of
> the time of counsel's conduct.  A convicted defendant making
> a claim of ineffective assistance must identify the acts or
> omissions of counsel that are alleged not to have been the
> result of reasonable professional judgment.  The court must
> then determine whether, in light of all the circumstances,
> the identified acts or omissions were outside the wide range
> of professionally competent assistance.  In making that
> determination, the court should keep in mind that counsel's
> function, as elaborated in prevailing professional norms, is
> to make the adversarial testing process work in the
> particular case.  At the same time, the court should
> recognize that counsel is strongly presumed to have rendered
> adequate assistance and made all significant decisions in
> the exercise of reasonable professional judgment.

Strickland, 466 U.S. at 690.

The second part of the Strickland test requires a showing that a defendant was prejudiced by his counsel's substandard performance.  "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."  Id. at

686.  Thus, a defendant must prove not only that counsel's conduct fell below an objective standard of reasonableness, but that this prejudiced him in the sense that there is a reasonable probability that, but for counsel's errors, the result below would have been different.  Id. at 687-688.

The defendant bears the burden of proof, by a preponderance of the evidence, on both prongs of the Strickland test.  Scarpa v. DuBois, 38 F.3d 1, 8 (1st Cir. 1994); Lema v. United States, 987 F.2d 48, 51 (1st Cir. 1993).  The test itself has been characterized as "highly demanding."  Kimmelman v. Morrison, 477 U.S. 365, 383 (1986).  See also Lema v. United States, 987 F.2d at 51 ("A petitioner bears a very heavy burden on an ineffective assistance claim.").  The reviewing court "must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"  Strickland, 466 U.S. at 689.  Moreover, in applying the test it must be recalled that the Sixth Amendment "does not guarantee a defendant a letter-perfect defense or a successful defense."  United States v. Natanel, 938 F.2d 302, 309-310 (1st Cir. 1991).  Rather, it "guarantees only a fair trial and a competent attorney."  Engle v. Isaac, 456 U.S. 107, 134 (1982).  As the First Circuit more colorfully put it, "dreary lawyering does not

13

offend the Constitution."  <u>Scarpa v. Dubois</u>, 38 F.3d at 8.

**ARGUMENT**

> A.   VAZQUEZ' INEFFECTIVE ASSISTANCE CLAIM IS CONCLUSORY AND INADEQUATE ON ITS FACE, AND AS SUCH, DOES NOT MEET THE STRICKLAND TEST.

Vazquez has not met his burden under <u>Strickland</u>.  In his motion for habeas relief, Vazquez merely alleges that he failed to present his "jurisdictionally defective" claim because his counsel was ineffective.  His four-page motion is curiously devoid of any factual averments, affidavits or exhibits to support his claim.  Simply put, Vazquez offers no specifics on how or why his attorney was ineffective, and as such his petition should be summarily denied without an evidentiary hearing.  *See* <u>United States v. McGill</u>, 11 F.3d 223, 224 (1st Cir. 1993)("a 2255 motion may be denied without a hearing as to those allegations which if accepted as true, entitled the movant to no relief, or which need not be accepted as true because they state conclusions instead of facts, contradict the record, or are inherently incredible."); <u>Mack v. United States</u>, 635 F.2d 20, 26-27(1st Cir. 1980)(same); <u>see also</u> <u>United States v. Rodriquez-Rodriquez</u>, 929 F.2d 747, 753 (1st Cir. 1991)(mere allegation that counsel wrongfully recommended going to trial did not provide basis for an evidentiary hearing).

The First Circuit has explained that summary dismissal of a §2255 motion is appropriate:

14

> if it plainly appears from the face of the motion that
> the movant is not entitled to relief. Rule 4(b) of the
> Rules Governing §2255 Proceedings. While genuine issues
> of material fact may not be resolved without a hearing,
> a hearing is not required where a habeas motion (1) is
> inadequate on its face, or (2) although facially
> adequate, is conclusively refuted as to the alleged
> facts by the files and the records of the case . . .
> The court must take the allegations contained in the
> petitioner's motion as true, except to the extent that
> they are contradicted by the record or are inherently
> incredible, and to the extent that they are merely
> conclusions rather than statements of fact.

Carey v. United States, 50 F.3d 1097, 1098 (1st Cir. 1995)

(citations and quotations omitted).

Claims of ineffective assistance of counsel that are heard

on the merits must contain many more details of the

ineffectiveness than what is alleged here.  See, e.g., Zannino v.

United States, 871 F.Supp. 79, 82 (D. Mass. 1994)(allegation that

attorney's "failure to proffer exculpatory evidence obtained

during a taped interview [attorney] held with [witness] amounted

to ineffective assistance of counsel"); McGill, 11 F.3d at 226-28

(allegation that attorney's opening statement should not have

included a remark about a firearm's expert and attorney should

not have show an entire full-length film to the jury amounted to

a cognizable claim of ineffective assistance of counsel).  On the

other hand, a claim of ineffective assistance of counsel was

dismissed for being too conclusory when it alleged that the

petitioner's attorney "failed promptly to communicate a favorable

plea bargain to him."  See David v. United States, 134 F.3d 470,

15

477-78 (1st Cir. 1998)(described as a "gossamer showing" in which "petitioner has put forth less than the bare minimum that is necessary to warrant an evidentiary hearing").  Vazquez' allegation is significantly barer than that in <u>David</u>, and this Court should not grant him the opportunity for the "fishing expedition" that the <u>David</u> court refused to engage in.  <u>Id.</u> at 478.

    B.    VAZQUEZ' MOTION TO VACATE, UNDER SECTION 2255, SHOULD BE DENIED, AS THE CLAIMS OF A JURISDICTIONALLY DEFECTIVE INDICTMENT AND INEFFECTIVE ASSISTANCE OF COUNSEL ARE INVALID.

Frequently, defendants, who enter a guilty plea, change their minds about that decision and attempt to vacate their sentences by submitting a motion under 28 U.S.C. §2255.  These collateral attacks brought by such defendants are subject to special limits, however, because the government's interest in the finality of a conviction is even more pronounced when the conviction rests on a guilty plea.  *See* <u>United States v. Timmreck</u>, 441 U.S. 780, 784 (1979).  The Supreme Court has adhered to the rule that a counseled plea of guilty renders irrelevant those constitutional violations not logically inconsistent with the valid establishment of factual guilt and which do not stand in the way of conviction if factual guilt is validly established.  *See* <u>Lefkowitz v. Newsome</u>, 420 U.S. 283, 288 (1975); <u>Menna v. New York</u>, 423 U.S. 61, 62 (1975).  Therefore, any issue regarding whether a court has jurisdiction should be

raised upon trial or prior to pleading guilty and not by motion to set aside judgement and sentence after a defendant enters a guilty plea. *See* Markham v. United States, 215 F.2d 56 (4th Cir. 1954).

Pertaining to the federal witness tampering statute, 18 U.S.C. § 1512, grand jury proceedings qualify as proceedings for the purpose of the offenses of use or threat of physical force to influence the testimony of another person in "official proceedings." United States v. Kelley, 36 F.3d 1118, 1128 (D.C. Cir. 1994). The same is true for similarly worded statute regarding conspiring to tamper with a witness, 18 U.S.C. § 371. Id. For the purposes of these statutes, the government is not required to prove that a defendant was aware of the involvement of a "federal grand jury" and/or "federal law enforcement officers." United States v. Scaife, 749 F.2d 338, 348 (6th Cir. 1984). Additionally, the witness tampering statute does not specifically state the word "federal" with regards to either official proceeding or law enforcement agents. *See* 18 U.S.C. § 1512(a) & (b).

Finally, as noted above, to succeed in bringing ineffective assistance of counsel claim under 28 U.S.C. § 2255, a defendant bears the burden of showing that the performance of the defense counsel was deficient and that the deficiency prejudiced the defendant. *See* Strickland v. Washington, 446 U.S. at 687-88.

This is a difficult standard to satisfy as there exists a "strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." Strickland, 446 U.S. at 689.

Vazquez plead guilty to all four counts in the indictment and in doing so, he admitted in open court to all the pertinent facts as alleged in the government's lengthy and detailed colloquy.  Additionally, Vazquez understood fully the nature and extent of the federal crimes to which he plead guilty.  Since Vazquez did not challenge the alleged jurisdictional defect prior to or at sentencing or on appeal, this Court should deny Vazquez' motion to vacate sentence on the grounds alleged in his motion.

Vazquez offers no legal memorandum in support of his motion, which would explain the basis for his assertions.  Instead, he asserts his claims by filling in a few lines of a motion to vacate form.  From his motion, he appears to be asserting that the indictment contained a jurisdictional defect because it did not indicate that he was using the threat of force to keep a witness from giving information to a "federal" law enforcement agent and a "federal" grand jury.  However, the facts related above and at Vazquez' plea colloquy clearly state otherwise.

The Supreme Court has adhered to the rule that a counseled plea of guilty, during which Vazquez solemnly admitted that he was in fact guilty of the charged offenses, renders irrelevant any independent claims of constitutional violations that occurred

18

prior to the entering of a guilty plea.  *See* Lefkowitz v. Newsome, 420 U.S. at 288; Menna v. New York, 423 U.S. at 62.  In addition, where an indictment charges the defendant under a federal statute and the sentencing court has jurisdiction over the offense defined by federal statute, the sufficiency of the indictment is not subject to attack by habeas corpus or by motion under 28 U.S.C. § 2255.  Bush v. United States, 347 F.2d 231, 232 (6th Cir. 1965).  Therefore, Vazquez is barred from raising the issue of whether the indictment is jurisdictionally defective because it has to be raised prior to pleading guilty and not by motion to set aside judgement and sentence after a defendant enters a guilty plea.  *See* Markham v. United States, 215 F.2d 56 (4th Cir. 1954).

Additionally, Vazquez' assertion that the indictment fails to state an essential element of the crimes to which he plead guilty is flawed because the wording of the indictment clearly mirrors the wording of the statute and therefore, and thus, this charge is one over which this Court has jurisdiction.  Vazquez' claim is also without merit because, under the federal witness tampering statute, 18 U.S.C. § 1512, grand jury proceedings qualify as proceedings for the purpose of the offense of use or threat of physical force to influence the testimony of another person in "official proceedings."  United States v. Kelley, 36 F.3d 1118, 1128 (D.C. Cir. 1994).  There is no indication that it

19

is necessary to specify that the proceedings are federal in nature and thus, Vazquez' claim is groundless, as the wording of the statute clearly states that all the crimes to which he plead guilty are federal crimes. *See* 18 U.S.C. § 1512; 18 U.S.C. § 371. Furthermore, these statutes that Vazquez violated do not require the government to prove that a defendant was aware of the involvement of a "federal" grand jury and/or "federal" law enforcement officers and so, this counters VAZQUEZ's jurisdiction claim. *See* United States v. Scaife, 749 F.2d at. Therefore, there is no jurisdictional defect in the indictment that would warrant Vazquez' sentence to be vacated.

Since there is no jurisdictional defect in the indictment and no basis for any of the claims that Vazquez has hastily asserted, there is no need to fully delve into an analysis of the ineffective assistance of counsel claim, under 28 U.S.C. § 2255. Vazquez voluntary and intelligently made a counseled plea of guilty to the federal crimes with which he was charged. There is no issue with regards to the indictment being jurisdictionally defective at the time of the plea, and thus, his attorney did not take any steps to allege such an unfounded claim, as Vazquez now asserts. Therefore, VAZQUEZ, in his present motion, would be unable to meet his burden in bringing an ineffective assistance of counsel claim under 28 U.S.C. § 2255, because he can not show that the performance of his defense counsel was deficient and

that the deficiency prejudiced the him.  *See* <u>Strickland v. Washington</u>, 446 U.S. at 687-88.

<u>CONCLUSION</u>

WHEREFORE, for the aforementioned reasons the government respectfully requests that this Court deny Vazquez' 28 U.S.C. § 2255 Motion to Vacate.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By:
 /s/Antoinette E.M. Leoney
ANTOINETTE E.M. LEONEY
Assistant U.S. Attorney
Date: September 1, 2005       (617) 748-3100

<u>CERTIFICATE OF SERVICE</u>

Suffolk, ss.                          Boston, Massachusetts
                                      September 1, 2005

I, Antoinette E.M. Leoney, Assistant U.S. Attorney, do hereby certify that I have this day served a copy of the foregoing by regular mail, to Petitioner Francisco J. Vazquez, 80398-038, FCI McKean, PO Box 8000, Bradford, PA 16701-0980.

 /s/Antoinette E.M. Leoney
ANTOINETTE E.M. LEONEY